## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**STEFFANY POWELL-COKER,**          )
                                    )
    **Plaintiff**,                    )
                                    )
**vs.**                             )          Civil Action Number
                                    )          **2:18-cv-01094-AKK**
                                    )
**NORFOLK SOUTHERN**                )
**RAILWAY COMPANY, INC., et al.,**  )
                                    )
    **Defendants**.                  )

## MEMORANDUM OPINION AND ORDER

Steffany Powell-Coker filed this lawsuit against Norfolk Southern Railway Company, Inc. ("NSRC") and several of its employees including, Todd Reynolds, Ray Wallace, Rodney Moore, Patrick Whitehead, Steve Wilburn, Donald Craine, Kraig Barner, Darrel Green, Stephen Weatherman, and Dale Brown (hereinafter collectively the "Individual Defendants"), alleging retaliation in violation of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109, Count I, and an Alabama state law claim of outrage, Count II. Doc. 16. Before the court is Defendants' motion to dismiss Powell-Coker's first-amended complaint. Doc. 22. The motion is fully briefed and ripe for review, docs. 22, 23, 26, 27, and is due to be granted.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND[1]

Powell-Coker is an employee in the Birmingham office of NSRC, an interstate railroad carrier. Doc. 16 at 2. Her division clerk and administrative assistant job duties included "documenting employees' discipline history and ensuring compliance with NSRC rules and union requirements that promote rail safety." *Id.* at 3-4. Powell-Coker alleges that her supervisor, Todd Reynolds, sexually harassed her through inappropriate explicit messages, attempts to touch her, threats to her husband, improper monitoring, and attempts to relocate her job to Atlanta, Georgia. *Id*. at 5. This harassment is the basis of her outrage claim.

Powell-Coker's retaliation claim is based on her contention that Defendants retaliated against her after she reported hazardous safety conditions. Apparently, in October 2016, Powell-Coker's direct supervisor and then-Assistant Division Superintendent, Ray Wallace, and Steve Wilburn purportedly instructed her to falsely alter and/or delete employee disciplinary files, including safety-related offenses. *Id.* Powell-Coker maintains that these repeated orders created an ongoing safety issue that placed railroad employees at risk. *Id.* As a result, she notified Darrel Green (general manager), Rodney Moore (division superintendent),

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (*quoting GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Iqbal*, 556 U.S. at 678-79.

and Todd Reynolds (supervisor) of these "hazardous safety" concerns. *Id.* She also notified Donald Craine, an assistant general manager in charge of auditing the discipline reports, and he advised that she provide him with "weekly un-altered discipline reports." *Id.*

Allegedly, in retaliation for her complaints, in December 2016 and January 2017, NSRC placed Powell-Coker on furlough on two occasions due to "work force reductions" and accused her of incorrectly addressing an envelope and missing a deadline to file a disciplinary appeal for two employees. *Id.* at 8. In February 2017, Stephen Weatherman (an NSRC employee) investigated Powell-Coker's safety hazard allegations but found that they lacked merit. *Id.* at 7. A month later, Steve Wilburn (charging officer), Craig Barner (hearing officer), and Dale Brown (assisting hearing officer) held a disciplinary hearing regarding Powell-Coker's alleged mishandling of the two employee's disciplinary appeal and ultimately issued "a letter of reprimand." *Id.* at 8-9.

Based on the furloughs and reprimand, Powell-Coker filed a complaint under the FRSA with the Occupational Safety and Health Administration ("OSHA") alleging retaliation. Due to OSHA's failure to issue a final decision on the merits within 210 days and because the delay was not due to her bad faith,[1] Powell-Coker seeks de novo review of her claim in this court. *Id.* at 2.

---

[1] The "kick-out provision" of the FRSA states: "[I]f the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo

# III. DISCUSSION

There are two components to the motion to dismiss. First, the Individual Defendants, excluding Moore, argue that Powell-Coker's FRSA retaliation claim, Count I, fails to specify how each of them learned about her protected activity and/or individually participated in the alleged adverse employment action. Also, as to Count I, Defendants Weatherman, Brown, and Traywick argue that Powell-Coker failed to exhaust prerequisite administrative remedies because her OSHA complaint fails to explicitly mention them. Second, all the Defendants argue that the outrage claim, Count II, lacks sufficient descriptions of the alleged harassment and the severe emotional distress required for such a claim. The court will address first the retaliation claim in Section A, followed by the outrage claim in Section B.

## A. FRSA Retaliation Claim – Count I

The FRSA provides that "[a] railroad carrier… or an officer or employee of such a railroad carrier... may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done[,] ... to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security." 49 U.S.C. § 20109(a)(2). Courts interpreting this provision note that the

___

review in the appropriate district court of the United States . . ." *see Suber v. CSX Transportation, Inc.,* No. 4:15-CV-200 (CDL), 2016 WL 10567192, at *2 (M.D. Ga. June 1, 2016) (citing 49 U.S.C. § 20109(d)(3)).

FRSA "incorporates by reference the rules and procedures applicable to Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR–21") whistleblower cases." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). This framework requires that the plaintiff must show that "the protected activity was a 'contributing factor' to the adverse employment action." *Id.* (citing *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475–76 (5th Cir.2008)). To do so, the employee must demonstrate, by a preponderance of the evidence, that "(1) he engaged in a protected activity; (2) the railroad employer knew or suspected that he engaged in a protected activity; (3) he suffered an adverse action; and (4) the protected activity was a contributing factor in the adverse action." *Mercier v. United States Dep't of Labor, Admin. Review Bd.*, 850 F.3d 382, 388 (8th Cir. 2017); *see also Araujo,* 708 F.3d at 156–57 (same); 49 U.S.C. § 20109(b)(1)(A).

The Individual Defendants (minus Moore) contend that Powell-Coker has failed to sufficiently allege FRSA retaliation claims against them. Specifically, Whitehead, Brown, and Traywich assert correctly that Powell-Coker failed to name them as respondents in her administrative complaint to OSHA. *See* docs. 22 at 3, 4; 6-1; *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 966 (8th Cir. 2017) ("[T]he text of the statute therefore makes clear that to receive relief under the FRSA, litigants must first file a complaint with OSHA."). Moreover, the amended complaint filed in this court offers little to no information regarding the

involvement of these Defendants, if any, in the FRSA retaliation claim,[2] and there is nothing in this record to allow the court to find that OSHA's investigation would have included the alleged misconduct of these three Defendants. *Cf. Windom v. Norfolk S. Ry. Co.,* No. 5:12-CV-345 MTT, 2013 WL 432573, at *3-4 (M.D. Ga. Feb. 1, 2013) (denying motion to dismiss because the plaintiff's complaint to OSHA made it "sufficiently clear that [he] intended his OSHA complaint to be directed at Norfolk and [the management official]" who he did not specifically name). Accordingly, the court finds that Powell-Coker failed to satisfy the exhaustion requirement against these three individual Defendants, and also failed to allege a "sufficient factual matter" that supports a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

As for the remaining Individual Defendants, they raise multiple arguments in favor of dismissal, including the shotgun nature of the complaint. Indeed, courts "have little tolerance for shotgun pleadings" because they "waste scare judicial resources" and "inexorably broaden[] the scope of discovery." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). "Shotgun pleadings violate Rule 8, which requires 'a short and plain statement of the claim showing that the pleader

---

[2] The Amended Complaint refers to Defendant Whitehead once as "an employee of NSRC, [who] had supervisory authority over the Plaintiff." Doc. 16 at 3. Defendant Traywick is referred to twice as an "employee of NSRC, at all times relevant to this Complaint [who] had authority to investigate, discover or terminate the misconduct" and an employee who "participated in that [outrageous sexual] conduct to some extent." *Id.* at 4, 11. Defendant Brown is described as "an employee [who] had authority to investigate" the misconduct and that he served as an "assistant hearing officer" at her March 2017 disciplinary hearing. *Id.* at 4, 12. Powell-Coker never indicates whether Whitehead, Traywick, or Brown knew of her alleged protected activity and contributed in any way to adverse employment actions. *Id.*

is entitled to relief,' by "fail[ing] to one degree or another ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Relevant here, Powell-Coker's pleadings, doc. 16 at 10, similarly "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). As such, the complaint is a quintessential example of shotgun pleadings, and on this basis alone, it is due to be dismissed.

The retaliation claim against the Individual Defendants also fails based on the lack of specific pleadings to establish knowledge of the protected conduct and/or involvement in the adverse conduct. Powell-Coker pleads the following allegations in support of her claim:

- Wallace instructed her to "falsely alter or delete the disciplinary files of employees, including files for safety-related offenses." Doc. 16 at 5.

- On another occasion, Wallace and Wilburn "again instructed [she] falsely alter disciplinary reports and career service records." *Id.* at 7.

- In October 2016, she reported that these instructions created a "hazardous safety situation" to Green, Moore and Reynolds. *Id.* at 6.

- Weatherman completed an investigation regarding her safety concerns yet found them to lack any merit in February 2017. *Id.* at 7.

- Craine, the head of the Birmingham NSRC office's disciplinary reports, allegedly told her that she should provide "weekly un-altered discipline reports" but failed to take "substantive action to remedy the safety issue." *Id.*

Based on the pleadings, the parties generally agree that Powell-Coker engaged in a protected activity and suffered an adverse action. The crux of their dispute rests on whether it is plausible that these specific Defendants each "knew or suspected that [s]he engaged in the protected activity" and whether "the protected activity was a contributing factor in the adverse action." *Mercier*, 850 F.3d at 388 (8th Cir. 2017). In her responsive brief, Powell-Coker concedes that her claims are speculative, noting that "evidence must be collected to determine the nature of the involvement of each individual Defendant." Doc. 26 at 3. She offers unsupported assertions that individually pleading the specific retaliation elements for each defendant imposes an unfair pleading burden which "rise[s] high above the speculative level," and asks the court instead to accept that a basis of liability exists against each individual Defendant "by virtue of their position with the company [and] their proximity to the protected activity and/or retaliatory acts." Doc. 26 at 2-3.

The court declines to do so because, contrary to Powell-Coker's contention that she can string "some elements" and connect them to "individual Defendants" based on indistinguishable actions that were either "actively perpetuated or passively allowed to occur by multiple Defendants collectively," *id.* at 7, the case law requires that Powell-Coker plausibly demonstrate in her pleading that each defendant was aware of her engagement in protected activity *and* the actions of each were contributing factors in the adverse employment action. *See Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014). In that respect, although her allegations establish that some of the Defendants were aware of her engagement in protected activity,[3] Powell-Coker fails to allege how any of their actions contributed[4] to the adverse employment actions at issue. Knowledge of protected conduct alone is not enough to show retaliatory conduct. *See Kuduk*, 768 F.3d at 789 (requiring that "actual or constructive knowledge" of the protected activity be a "contributing factor" in the adverse action). Accordingly, as pleaded, the retaliation claim is deficient with respect to Defendants Wallace, Wilburn, Craine, Green, Reynolds, and Weatherman, whom Powell-Coker does not plead had any role in the adverse conduct.

---

[3] Powell-Coker never alleges that she informed Wallace and Wilburn about her safety concerns. Doc. 16 at 6-7.

[4] Powell-Coker cites to *Windom*, 2013 WL 432573, at *1, to argue that eleven NSRC employees could have "acted together to violate the FRSA." This reliance on *Windom* is misplaced. In *Windom*, the FRSA retaliation claim survived the motion to dismiss because the plaintiff sufficiently alleged that he reported an injury to his immediate supervisor who then informed a managerial employee. *Id.* The company, acting through a manager, then repeatedly harassed and threatened the plaintiff to provide medical documentation of this reported injury. *Id.* These facts are materially different than those here.

Relatedly, as to Defendants Brown and Barner, the two individuals who purportedly conducted the disciplinary hearings and issued a reprimand letter, Powell-Coker failed to plead that they knew of her protected activity prior to taking the adverse employment action. A plaintiff cannot prove causation absent a showing that the decision makers had knowledge of the protected activity. *See, e.g., Singleton,* 725 F. App'x at 738 (holding that retaliation claims require the decision-makers' awareness of the protected conduct and that the protected activity and the adverse action were not wholly unrelated); *Kuduk,* 768 F.3d at 791 (holding that for FRSA retaliation purposes supervisors who make decisions to terminate employees must have knowledge of the employee's protected activity); *Blackorby v. BNSF Ry. Co.,* 849 F.3d 716, 721 (8th Cir.), cert. denied, 138 S. Ct. 264, 199 L. Ed. 2d 125 (2017) (noting for FRSA retaliation claims "the contributing factor that an employee must prove is *intentional retaliation* prompted by the employee engaging in protected activity") (emphasis in original); *Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 382 (7th Cir. 2018) (noting that although FRSA's "contributing factor" prong is a more lenient standard, the employee must prove the decision maker's awareness of the protected activity and "intentional retaliation prompted" by that awareness); *Head v. Norfolk S. Ry. Co.*, No. 2:15-CV-02118-RDP, 2017 WL 4030580, at *16 (N.D. Ala. Sept. 13, 2017) ("To show that [the defendant] knew of this protected activity [for FRSA claims], it is not enough for the plaintiff to show that someone in the organization knew of the protected

expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression.").  Put simply, merely conducting a disciplinary hearing is insufficient to show that Brown and Barner knew about the protected activity and that retaliatory animus factored into their decision during the disciplinary hearing.

To the extent Powell-Coker believes she can uncover facts implicating these defendants through discovery, "Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Rather, at the pleading stage, she is required to plead plausible facts showing she is entitled to the relief she seeks.  She has failed to plead the required knowledge of her protected activity as to Brown and Barner, and that the other Individual Defendants had any involvement in the adverse actions she challenges.  Therefore, the retaliation claim against the Defendants (minus Moore and NSRC) is due to be dismissed.

### B. Outrage Claim – Count II

The Defendants collectively challenge the outrage claim, contending that Powell-Coker has failed to sufficiently describe the alleged harassment and that employees are not liable for the intentional tort of a co-worker.  Doc. 22 at 5.  To recover under the tort of outrage,[5] a plaintiff must demonstrate that the defendant's

---

[5] Alabama's tort of outrage "is essentially equivalent to what many states refer to as 'intentional infliction of emotion distress.'" *K.M. v. Alabama Department of Youth Services,* 360 F.Supp.2d 1253, 1259 n. 4 (M.D.Ala.2005).

conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." G*reen Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala.1990) (citing *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala.1980); *see also Hill v. Cundiff*, 797 F.3d 948, 983 (11th Cir. 2015). Relevant here, in light of the Alabama Supreme Court decision in *Wilson*,[6] the proper inquiry at this stage is whether the alleged conduct was "so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." 2017 WL 6397654, at *3 (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). As Powell-Coker acknowledges, she must "set forth each of the elements of the tort of outrage in her complaint, and [make] a showing that she is entitled to relief." Doc. 26 at 11 (citing *Thomas v. Williams*, 21 So. 3d 1234, 1240 (Ala. Civ. App. 2008)).

The outrage claim fails for three reasons. First, Powell-Coker seeks to hold the Individual Defendants, excluding Reynolds, liable because they had knowledge of Reynolds's sexual misconduct and "yet passively ratified the conduct by failing to rectify it." Doc. 16 at 12. However, the Alabama Supreme Court has routinely found that even intentional conduct aimed to cause emotional distress fails to

---

[6] The Alabama Supreme Court recently decided that outrage claims are "not necessarily limited to three categories" that the Court has commonly recognized as appropriate for such a claim: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment." *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, No. 1160654, 2017 WL 6397654, at *3 (Ala. Dec. 15, 2017) (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)).

satisfy an outrage claim. *See Thomas*, 21 So. 3d at 1240 (holding that the defendant's intentional and malicious phone call to the plaintiff's employer with the intent of seeking her termination failed to allege an outrage claim at the motion to dismiss stage); *Bogus v. City of Birmingham, Alabama*, No. 2:17-CV-00827-TMP, 2018 WL 1746527, at *17 (N.D. Ala. Apr. 11, 2018) (noting that gossip, alleged irregularities in investigations, and verbal lashing were not sufficiently extreme and outrageous that no person could be expected to endure it). Powell-Coker's complaint fails to describe how the Individual Defendants, collectively or individually, intended or should have known that passive awareness of sexual misconduct and inaction toward Reynolds's conduct would result in Powell-Coker's alleged severe emotional distress. By failing to offer further details in her complaint, Powell-Coker's allegations against these Individual Defendants fall significantly short of alleging a plausible outrage claim.

Next, as for the claim against NSRC, to the extent that Powell-Coker is alleging vicarious liability for "acts of its directors, employees and agents," doc. 16 at 12, her complaint, as pleaded, fails to demonstrate a "compelling circumstance" in which "vicarious or respondeat superior liability" applies. *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 327 (Ala. 1989). An employer is liable for its employees' torts where "(1) the employee's acts are committed in furtherance of the business of the employer; (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious

acts." *Armstrong v. Standard Furniture*, 197 Fed.Appx. 830, 834 (11th Cir. 2006). However, Powell-Coker's fails to allege how NSRC "participated in, authorized, or ratified" Reynold's conduct. It seems Powell-Coker is contending that NSRC is vicariously liable for the acts of its employees, who purportedly "passively ratified the conduct by failing to rectify it." Doc. 16 at 12. But under Alabama law, ratification requires a showing that the employer "(1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation." *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999); *see also Murdoch v. Medjet Assistance, LLC*, 294 F. Supp. 3d 1242, 1278 (N.D. Ala. 2018) (noting that the employer must have "notice and an opportunity to correct [the tortious] conduct while it was a present problem"). In the absence of any pleaded fact that Powell-Coker utilized NSRC's complaint procedures for reporting sexual harassment to no avail, her allegations are insufficient under any theory of liability. Accordingly, Powell-Coker's vicarious liability claims against NSRC and the Individual Defendants, excluding Reynolds,[7] fail.

---

[7] Powell-Coker alleges that Reynolds sexually harassed in furtherance of NSRC's business, including "manipulating her career to force her to move to Atlanta" and "pressuring her to perform professional favors in the office." Doc. 16 at 11. However, as pleaded, these factual

Turning finally to Powell-Coker's outrage claim against Reynolds,[8] although she alleges that Reynolds sexually harassed her in several inappropriate ways, she fails to state any casual connection to her purported emotional distress and the severity of her mental anguish. *See Bogus,* 2018 WL 1746527, at *17 (noting that the plaintiff did not plausibly allege how unwanted romantic advances rose to the level of "egregious sexual harassment" because she does not "explain in detail" the substance of those advances to "allow the court to determine whether the conduct was egregious, rising to a level harassment that would be atrocious and utterly intolerable in a civilized society"). In explaining how the misconduct affected her, Powell-Coker only "offers labels and conclusions or a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 557. By merely reciting the elements of outrage, Powell-Coker's claim against Reynolds similarly fails at this juncture. *See Woodruff v. City of Tuscaloosa*, 101 So. 3d 749, 755 (Ala. 2012) (noting that the plaintiff failed to establish that he plausibly suffered from extreme emotional distress because he claimed he was only angry rather than suffering from severe emotional anguish or depression); *cf.*

---

allegations suggest that Reynolds committed these acts for "his own lustful desires." *Ex parte Atmore Community Hospital*, 719 So. 2d 1190, 1192 (Ala.1998). But even Reynolds committed these acts in furtherance of company goals, the outrage claim still fails because Powell-Coker does not sufficiently plead the severe emotional distress prong of the claim as explained *infra*.

[8] Although Powell-Coker mentions that "specifically Defendant Jay Traywick participated in that conduct to some extent," doc. 16 at 12, her assertion lacks the required detail. The court cannot surmise that Traywick was plausibly involved in committing sexual harassment and outrageous behavior based on pleadings that only vaguely mention him once in a thirteen page document. *Id.* Accordingly, the court will only address Powell-Coker's outrage claim regarding details of Reynolds's sexual misconduct.

*Daniel Voss v. State Farm Mutual Automobile Insurance Company*, No. 1:17-CV-01465-SGC, 2018 WL 4635747, at *9 (N.D. Ala. Sept. 27, 2018) (denying motion to dismiss because the complaint described "a gravely injured plaintiff enduring prolonged hospitalization, repeated brain surgeries, permanent brain damage, and rapidly mounting medical bills [and] the plaintiff was physically broken, financially exposed, and emotionally vulnerable").

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss, doc. 22, is **GRANTED.** Accordingly, the FRSA retaliation claims, Count I, against Patrick Whitehead, Jay Traywick, Todd Reynolds, Ray Wallace, Steve Wilburn, Kraig Barner, Stephen Weatherman, Donald Craine, Darrell Green, and Dale Brown, and the Alabama state law claim of outrage, Count II, against all the Defendants are **DISMISSED WITHOUT PREJUDICE.** Powell-Coker may proceed solely as to the FRSA retaliation claim against NSRC and Rodney Moore.

In light of this order, NSRC and Rodney Moore's motion for extension, doc. 24, is **MOOT.** Their answer to Count I is due in fourteen (14) days.

**DONE** the 19th day of October, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE